UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHIL AUGUSTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0364-B |
| | § | |
| ELEMENTREE INC., D/B/A CLOCKWORK, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Elementree Inc. d/b/a Clockwork ("Clockwork")'s Motion to Dismiss for Improper Venue and Failure to State a Claim (Doc. 7). For the reasons set forth below, the Court finds venue is improper and therefore **DISMISSES** this suit without prejudice to refiling in a court of proper venue.

### I.

### BACKGROUND

This patent infringement suit arises out of Clockwork's manicure robot, which was available at three retail stores in the Dallas/Forth Worth area. Plaintiff Phil Auguste, an inventor, owns a patent for his "Automatic Manicure Apparatus," a device that allows users to "have their fingernails automatically filed, buffed and painted." Doc. 1, Compl., ¶ 5; Doc. 8, Def.'s Pub. App'x, 4, 19. Auguste alleges Clockwork's manicure robot, MiNiCURE, infringes his patent because it "performs substantially the same function" as Auguste's patented device. Doc. 1 ¶¶ 17–18. Clockwork is a Delaware start-up company, headquartered in San Francisco. *Id.* ¶ 2; Doc. 7, Mot.

Dismiss, 3. Its patented "Automatic Nail Polish Application System and Method" enables the MiNiCURE to paint nails. Doc. 8, Def.'s Pub. App'x, 4. Clockwork emphasizes that in contrast to Plaintiff's patented device, the MiNiCURE's manicure capability is limited to painting nails. Doc. 7, Mot. Dismiss, 5–6.

In August 2021, Clockwork entered into a "Pilot Agreement" with Target Corporation ("Target") wherein Clockwork would deliver and operate its MiNiCURE robots in up to six Target stores in Texas and Minnesota. Doc. 13, Def.'s Sealed App'x, 52. The Pilot Agreement expresses Target and Clockwork's intention was to launch "an initial business relationship for the purpose of learning whether [their] business services and goals [were] compatible and whether other relationships may be mutually-beneficial." *Id.* at 50. Target selected the specific stores in which the MiNiCUREs would be placed. Doc. 13, Def.'s Sealed App'x, 47–52. Clockwork representatives, who were independent contractors, would conduct in-store maintenance on the robots but they did not personally provide any nail services to customers. Doc 7, Mot. Dismiss, 6; Doc. 14-3, Pl's Ex. C, 2. The representatives were required to check in with Target employees. Doc. 13, Def.'s Sealed App'x, 52. The Pilot Agreement was set for a six-month period, after which the parties could renew and extend the agreement for three more months. *Id.* at 52–53.

In May 2022, Clockwork began to operate the first MiNiCURE robots in Texas. Doc. 8, Def.'s Pub. App'x, 46–47. In August 2022, Clockwork and Target amended the Pilot Agreement, extending their relationship, with certain modifications, through July 2023.[1] Doc. 13, Def.'s Sealed App'x, 58. Despite the elongated term, each side could still terminate early with 30-day prior

---

[1] The Pilot Agreement and the amended Pilot Agreement are collectively referred to as the Pilot Agreements.

written notice. *Id.* And in fact, Clockwork and Target terminated this contract early on February 20, 2023. Doc. 8, Def.'s Pub. App'x, 48; Doc. 13, Def.'s Sealed App'x, 58.

At the time Auguste filed suit, the MiNiCURE was available in three Target stores in the DFW-area. Doc. 1, Compl. ¶ 12; Doc. 8, Def.'s Pub. App'x, 46–47. Clockwork moved to dismiss this suit for improper venue. Doc. 7, Mot. Dismiss, 11–15. Auguste contends the Northern District of Texas is a proper venue because Clockwork "committed acts of infringement and ha[d] a regular and established place of business" here by operating its MiNiCUREs in Target stores in this district. Doc. 1, Compl. ¶ 4. Clockwork denies having a "regular and established place of business" and its dispositive contention is that Clockwork itself never had a place of its own here. Doc. 7, Mot. Dismiss, 11–15; Doc. 15, Reply, 2–6.

## II.

## LEGAL STANDARD

A defendant may move to dismiss the claims against it for improper venue. FED. R. CIV. P. 12(b)(3). Patent suits are statutorily limited to two types of venues: the "district where defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C.A. § 1400(b); *see In re ZTE (USA), Inc.*, 890 F.3d 1008, 1014 (Fed. Cir. 2018). With respect to the patent venue statute, a defendant only "resides" in its State of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017). On the other hand, whether a defendant has a "regular and established place of business" under the second venue category is a fact-intensive inquiry. Finding proper venue under this second category requires the following: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

It has been held "as a matter of Federal Circuit law that, upon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue." *In re ZTE*, 890 F.3d at 1013. A plaintiff may discharge this burden by establishing facts that, when accepted as true, establish proper venue. *See Zilkr Cloud Techs., LLC v. RingCentral, Inc.*, No. 3:21-CV-2807-S, 2022 WL 1102863, at *2 (N.D. Tex. Apr. 12, 2022) (Scholer, J.). The Court "must . . . resolve all conflicts in favor of the plaintiff," but the Court "may look beyond the complaint to evidence submitted by both parties" in order to determine whether venue is proper. *AptusTech LLC v. Trimfoot Co.*, No. 4:19-CV-00133-ALM, 2020 WL 1190070, at *1 (E.D. Tex. Mar. 12, 2020) (citation omitted).

## III.

## ANALYSIS

For purposes of the first venue category, it is undisputed that Clockwork does not "reside" in this district because it is a Delaware company. Doc. 15, Reply, 2; 28 U.S.C. § 1400(b). The focus of the parties' venue dispute is the second venue category, which requires that a defendant have a "regular and established place of business." 28 U.S.C. § 1400(b). Specifically at issue is whether the MiNiCURE operations in the DFW area give rise to the conclusion that Clockwork established a "regular and established place of business" in the Northern District of Texas under the three *Cray* prongs. *In re Cray*, 871 F.3d at 1360.

With respect to the first *Cray* prong, the parties do not dispute that for purposes of determining venue, the relevant "physical space[s]" at issue are the three DFW-based Target stores containing MiNiCURE robots. Doc. 14, Resp., 4. The Court agrees Clockwork's services were in a physical place in the Northern District of Texas. *See id.*; *In re Cray*, 871 F.3d at 1360. Even assuming Clockwork's services in the district constituted a "regular and established place of

business" under the second *Cray* prong, the Court finds the third prong is not met. In particular, Auguste does not establish that the pertinent Target stores were places of Clockwork. In fact, the documentary record illustrates that the physical places in the district—the DFW-based Target stores—were not Clockwork's. Therefore, Clockwork's motion to dismiss under Rule 12(b)(3) must be granted.

A. *Cray* Factors

The Federal Circuit has laid out non-exclusive factors that courts use to consider when determining whether, under *Cray*'s third prong, a physical place in a district is a "place of the defendant." *In re Cray*, 871 F.3d at 1363–64; *see In re ZTE*, 890 F.3d at 1015 (recognizing non-exclusivity of factors). The factors include:

(i) whether the defendant owns or leases the place in the district, or exercises other attributes of possession or control over that place;

(ii) whether the defendant stores materials at that place to be sold from there;

(iii) the defendant's marketing, advertisements, and representations;

(iv) the nature and activity of the alleged place of business in the district in comparison to that of the defendant's places of business in other venues; and

(v) whether there is evidence that the defendant believed the district to be important to its business or intended to "maintain some place of business" in the district even if the place at issue was "terminated" by another's actions.

*See In re Cray*, 871 F.3d at 1363–65.

After conducting an analysis of these factors, the Court concludes the Target stores containing the MiNiCURE machines were not places of Clockwork under the third *Cray* prong. Moreover, although *In re Cray* presents non-exclusive factors, the Court does not find that there

are any other facts raised in the record that merit consideration or otherwise change the conclusion.

### 1. Exercising Attributes of Possession or Control

The first factor inquires into the defendant's exercise of property rights in the district and other attributes of control. The Pilot Agreements themselves do not indicate Target provided Clockwork lease rights in Target stores. *See* Doc. 13, Def.'s Sealed App'x, 49–60. Nor do the parties dispute that Clockwork did not own or lease space in the DFW-based Target stores. Doc. 7, Mot. Dismiss, 12; *see* Doc. 14, Resp., 6. But Auguste asserts that Clockwork asserted control over the physical space its MiNiCURE robots occupied in the Target stores because Clockwork's representatives "entirely controlled" the servicing and maintenance of the robots. Doc. 14, Resp., 7. This argument is far too narrow to address the substance of the possession and control inquiry. Under the Pilot Agreement, Target chose the physical store and internal location for Clockwork's MiNiCURE. Doc. 13, Def.'s Sealed App'x, 52. Even after the placement of each MiNiCURE in its stores, Target still had the authority to move them. Doc. 8, Def.'s Pub. App'x, 47. These facts illustrate that in substance the exclusive controller of the MiNiCUREs in the Target stores was Target. *See In re Cray*, 871 F.3d at 1363.

Auguste also contends that Clockwork possessed immediate control over the physical hardware of the MiNiCURE through its representatives. Doc. 14, Resp., 7. In support of his argument, Auguste compares Clockwork's contractual relationship to that of Google in *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933 (E.D. Tex. 2018). It is true that both Google and Clockwork contracted for exclusive control over their hardware. *Compare id.* at 965 ("Google's ownership of the server and its contents is absolute, as is its control over the server's location, once installed.") *with* Doc. 13, Def.'s Sealed App'x, 52–53 ("Target and [Clockwork] agree that only

[Clockwork] personnel are permitted to operate and otherwise access the Clockwork Hardware."). However, *Seven Networks* is distinguishable from the instant case in several important ways.

Most fundamentally, unlike Clockwork, Google never disputed its control. *Seven Networks*, 315 F. Supp. 3d at 965. Next, by simply installing its server into a third-party's "rack," Google was able to operate its server and its business. *See id.* at 965–66. But Clockwork's business requires ongoing, in-person customer access to each MiNiCURE. As a result, Clockwork does not simply become operational each time a MiNiCURE is stationed in a Target store. *E.g.*, Doc. 13, Def.'s Sealed App'x, 52–53. In-person customer access to the MiNiCURE renders all of Clockwork's appointments contingent on Target's operating hours. Doc. 8, Def.'s Pub. App'x, 47. For example, if Target chose not to open its store on a particular day, or to close early, Clockwork's operations would necessarily halt. *See id.* ("Clockwork did not have the ability to enter a store when it was closed or stay past closing time."). Finally, even though Clockwork had representatives in the Target stores, those representatives had to check in and out with Target employees before and after engaging with the MiNiCUREs. Doc. 13, Def.'s Sealed App'x, 52; Doc. 15, Reply, 3; *cf. Seven Networks*, 315 F. Supp. 3d at 965 n.50.

The Court finds Auguste's arguments regarding the first factor unconvincing as applied to the record. Indeed, the record indicates that Target, not Clockwork, exercised control over both the Target stores and their interiors.

2. Storing Materials for Distribution

The second factor concerns Clockwork's "storing of materials at a place in the district so that they can be distributed or sold from that place." *In re Cray*, 871 F.3d at 1364. There appears to be no dispute that Clockwork stored MiNiCURE robots and at least some related materials in the three Target stores this district. Doc. 14, Resp., ¶ 15; *see* Doc 15, Reply, 5–6. While the

MiNiCURE robots themselves were not sold or distributed to DFW consumers, they provided Clockwork's only advertised service: manicures. Thus, this factor weighs in favor of Auguste.

### 3. Marketing, Advertisements, and Representations

Auguste contends the third factor weighs in his favor because Clockwork's website included Target's logo and reference to the three DFW-based Target store locations at which customers could receive MiNiCURE services. Doc. 14, Resp., 8. When looking to the use of signage, courts must consider whether signage supports a conclusion that the alleged infringer is holding out a place of business as its own. *In re Cray*, 871 F.3d at 1364.

Neither the Complaint nor the documentary evidence suggests that Clockwork marketed, advertised, or represented the Target locations were *Clockwork's* places of business. *Id.* Listing the DFW-based Target stores on the Clockwork website does not transform the stores into places of Clockwork. *AptusTech*, 2020 WL 1190070, at *4. The submissions to the Court confirm that Clockwork was holding out these locations as Target's and not as Clockwork's. For example, Auguste complains customers could schedule MiNiCURE appointments "through Clockwork's website at any of the *Target* locations listed." Doc. 1, Compl., ¶ 14 (emphasis added); *see also* Doc. 14-1, Pl.'s Ex., 2 (depicting screenshot of Clockwork's website listing as appointment option "Clockwork MiNiCURE @ *Target*." (emphasis added)). Auguste's emphasis on the use of Target logos on Clockwork's website is misplaced. And Clockwork confirms neither it nor Target "displayed any [Clockwork] signage on or outside" Target stores containing MiNiCURE robots. Doc. 8, Def.'s Pub. App'x, 46–47. Thus, this factor does not weigh in favor of Auguste.

### 4. Comparing Nature and Activity of Clockwork's Other Places of Business

Auguste asks the Court to compare the nature and activity of the Target stores in this district with the activity of other Target stores containing MiNiCUREs. Doc. 14, Resp., 8–9. But

in the absence of sufficient information enabling the Court to conclude the Target stores in other districts are Clockwork's "other places of business," the Court does not engage in such a comparison. Clockwork asks the Court to compare the Target stores in this district to its headquarters in San Francisco, which Auguste has recognized as a place of Clockwork's business. Doc. 15, Reply, 4–5; Doc. 1, Compl., ¶ 2. The Court agrees with Clockwork that the appropriate comparison is between the DFW-based Target stores hosting MiNiCURE machines and Clockwork's headquarters. *See In re Cray*, 871 F.3d at 1364 (comparing "*alleged place* of business" against "other places of business *of the defendant* in other venues").

Comparing the nature of Clockwork's operations at the Target stores in this district against the company's operations at its San Francisco offices makes clear that Clockwork did not "actually engage in business" from the Targets in this district. *See id.* The San Francisco offices have prominently posted Clockwork signage, house all but three employees, and all of the core design, marketing and sales operations occur out of them. Doc. 8, Def.'s Pub. App'x, 46.

On the other hand, Clockwork has no signs outside of partnering Target stores, it does not have any employees stationed at the Targets, and the nature of its operations through independent contractors in the Target stores appears to be limited to maintaining the MiNiCURE robots. *See id.* at 47; Doc. 14-3, Pl's Ex. C, 2 (reflecting QR code through which customers book appointments on their own devices rather than through an on-site representative). Clockwork's representatives at the Target stores were all independent contractors, who did not personally service any customers. Doc. 14-3, Pl's Ex. C, 2 (depicting various nail tools available to customers for self-service); Doc 7, Mot. Dismiss, 6. Consequently, even the representatives' conduct does not rise to a level comparable to that of the Clockwork employees in San Francisco.

The Court finds the nature and activity of Clockwork's headquarters were far more integral to Clockwork's business than the nature and activity of the DFW-based Target stores.

5. Intention to Maintain Place of Business

Auguste has not alleged any facts supporting the conclusion that Clockwork itself believed this district to be especially important to its business or that the start-up intended to remain in the district in the absence of its agreement with Target. *See In re Cray*, 871 F.3d at 1364. Indeed, Target, not Clockwork, chose the store locations "where Clockwork could deliver the MiNiCURE[s]," which is why the robots came to this district in the first place. Doc. 8, Def.'s Pub. App'x, 47. And "Clockwork has not had any of its [MiNiCURE] machines in Texas" since the contract between Target and Clockwork was terminated. *Id.* at 46; *In re Cray*, 871 F.3d at 1364.

Accordingly, the Northern District of Texas is not a proper venue for Auguste's patent suit.

### IV.

### CONCLUSION

For the reasons discussed above, the Court finds that venue is improper in the Northern District of Texas and **GRANTS** Clockwork's Motion to Dismiss to the extent it seeks dismissal under Rule 12(b)(3). The Court need not address the motion to dismiss for failure to state a claim. The Complaint is **DISMISSED WITHOUT PREJUDICE** to refiling in a court of proper venue.

**SO ORDERED.**

**SIGNED: January 24, 2024.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE